### THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| THE ESTATE OF TAYLOR LOWERY, et al., <br><br> Plaintiffs, <br><br> v. <br><br> CITY OF TOPEKA, KANSAS, et al., <br><br> Defendants. | Case No. 2:24-CV-002336-DDC-ADM |

### DEFENDANTS MOTION FOR A PROTECTIVE ORDER

COME NOW, Defendants the City of Topeka, by and through its counsel Nicholas H. Jefferson, and Defendants Malcolm Gillum, Justin Good, Bradley Netherton, and George Chiles by and through Jeffrey M. Kuhlman and Spencer K. Bailly, of the law firm of Watkins Calcara, Chtd., their attorneys, and pursuant to Fed. R. Civ. P. 26(c), move for entry of a protective order in this matter. In support of this motion, Defendants state as follows:

### Introduction and Background

This case arises out of a police shooting. Plaintiffs assert that Topeka Police Officers used excessive force and committed assault and battery when they shot and killed Taylor Lowery on October 13, 2022. Plaintiffs also allege that the City is liable for their damages under a *Monell* theory. Defendants anticipate producing documents that they would prefer to designate as confidential. Defendants have conferred with Plaintiffs, and there are several proposed designations to which Plaintiffs do not object. Specifically, there is no objection to Defendants designating as confidential personnel files and any other documents contain personally identifiable information of any defendant, witness, victim, or third party, that may be produced by Defendants. Good cause to protect this information exists because personally identifiable information can be used to subject individuals to identity theft, harassment, or embarrassment, and it is widely recognized that such information should

not be freely disseminated. *See e.g.,* Fed. R. Civ. P. 5.2; *EEOC v. Kan. City. S. Ry.*, 2000 U.S. Dist. LEXIS 21806, at *12-13 (D. Kan. Oct. 2, 2000) ("Good cause exists to protect the confidentiality of the requested personnel file. Accordingly, the Court orders that the documents provided in response to Request 1 be deemed confidential. Plaintiff shall use them for no purpose other than this litigation.").

The parties disagree as to the confidentiality of other documents. Defendants seek to designate as confidential the following times: (1) bodycam footage of the officers involved or present in the events leading up to, during, and following the shooting of Taylor Lowery, (2) footage of KBI interviews of law enforcement officers, and (3) footage of interviews of victims and witnesses. For the reasons set forth herein, the Court should grant Defendants' motion for a protective order regarding these categories of footage.

## Argument and Authority

"Federal Rule of Civil Procedure 26(c) governs motions for protective order. It provides that the court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." *Holman v. Future Growth, LLC*, 2024 U.S. Dist. LEXIS 137245, at *6 (D. Kan. Aug. 2, 2024). Here, Defendants have the burden of showing good cause for the order. *Id.*

> The court has broad discretion to decide when a protective order is appropriate and what degree of protection is warranted. As the Supreme Court has recognized, the trial court is in the best position to weigh fairly the competing needs and interests of the parties affected by discovery. The unique character of the discovery process requires that the trial court have substantial latitude to fashion protective orders.

*Id.* at *6-7 (internal quotation marks omitted).

### I. The footage should be confidential because it, too, contains personally identifiable information.

All three categories of the footage that Defendants would propose to designate as confidential contain personally identifiable information of parties, witnesses, victims of crimes, or innocent third parties. Several of these individuals are minor children. As a few examples, Officer Chiles' bodycam

footage captures an interaction with the traumatized victim of the attempted carjacking that occurred shortly before Lowery was shot. She provides her name, date of birth, contact information, and address, to law enforcement. She also provides the name and date of birth of her minor granddaughter, who can be seen sucking on a pacifier in a onesie pair of pajamas. Officer Chiles also received statements, including names, dates of birth, and contact information, for various third-party witnesses.

Officer Good's bodycam footage captures an interaction with a minor child that was located in the home Lowery was occupying before he fled to the Kwik Shop. Officer Gillum's bodycam footage begins with him conducting a wellness check on a citizen who had nothing to do with the shooting of Lowery, and involves him describing a personal argument with his girlfriend. Notably, in the footage, the citizen provides both his and his girlfriend's names and dates of birth. In fact, most of the bodycam footage of Topeka Police Department Officers that would be produced contain footage of officers obtaining personally identifiable information from various witnesses or other non-parties.

The KBI's interviews of the officers involved in the shooting contain similar information. At the beginning of each interview, the KBI asks the officer their name, date of birth, and contact information. Lastly, footage of law enforcement interviews of victims and witnesses after the fact are accompanied with similar concerns. Each interview includes the provision of names, dates of birth, addresses, and contact information by the subject. And the footage also includes interactions with minor children who were caught up in the aftermath of the shooting.

It is standard for personal identifying information to be treated as confidential in litigation such as this. Asking Defendants to produce the above-described footage without any protection would be asking Defendants to provide the names, contact information, addresses, and dates of birth for every officer, witness, and victim that was present at the Kwik Shop in Topeka where Mr. Lowery was shot, or was later questioned by law enforcement. This would include the names and contact

3

information of minor children. The confidentiality of this sort of information is widely recognized amongst litigants and is codified in the federal rules of civil procedure. Fed. R. Civ. P. 5.2.

Furthermore, although the Kansas Open Records Act ("KORA") is not dispositive on the issue of a protective order in this matter, it is illustrative of how the law views this type of footage. Bodycam footage and footage of law enforcement investigations are defined as "criminal investigation records" under KORA. K.S.A 45-217(e); K.S.A. 45-254. Criminal investigation records are not open records under KORA. K.S.A. 45-221(a)(10); however, a Kansas District Court can order the disclosure of such records in certain circumstances. K.S.A. 45-221(a)(10)(A-F). Specifically, as relates to bodycam footage, KORA does not require dissemination of such footage, but rather, provides that the subject of the footage[1] be allowed to view the footage. K.S.A. 45-254(b)-(c). The same principle is true, here. There is no doubt that Plaintiff has every right to relevant bodycam or investigative footage in discovery, but it does not follow that the footage should not be treated as confidential, to be used only for purposes related to this litigation.

Given the obvious privacy concerns, Defendants respectfully request that the footage described above be produced subject to a protective order.

**II.    Defendants are concerned that the footage will be used for improper purposes.**

During the parties' Rule 26(f) conference and the initial scheduling conference with the Court, counsel for Plaintiffs made it clear that they primarily oppose a protective order because some information about the shooting has been disclosed and public statements have been made regarding the events underlying this lawsuit. The primary example cited by Plaintiffs is the Shawnee County District Attorney's Office Use of Deadly Force Review that was issued on January 25, 2023. Plaintiffs believe the District Attorney's Office made false statements, and apparently, wants to use footage produced to publicly rebut those claims.

---

[1] Or the subject's guardian, heir, or attorney.

The District Attorney conducted a criminal review of the Topeka Police Department's use of force. As the Court well knows, the District Attorney is a separate entity from the City of Topeka, and the City of Topeka has no input or control over what the District Attorney's office says or does. A desire to publicly campaign against statements of a non-party is an insufficient justification to overcome the legitimate confidentiality concerns that accompany the production of the footage described above. On the contrary, Plaintiffs' apparent desire to litigate this matter publicly, using video, is further justification for the entry of a protective order.

> A party generally cannot use discovery for purposes unrelated to the lawsuit. **Liberal discovery is provided for the sole purpose of assisting in the preparation and trial or the settlement of litigated disputes**. However, liberal discovery has a significant potential for abuse when litigants seek information that is not only irrelevant, but potentially damaging to reputation and privacy. The courts are empowered to issue protective orders on a good cause showing that a party intends to use the discovery for a purpose unrelated to settlement or trial preparation of the case in which the discovery is taken or requested.

6 Moore's Federal Practice – Civil § 26.101 (emphasis added). Federal courts have the discretion to enter a protective order to ensure that a matter is tried in the courtroom, and not in the court of public opinion.

> We find the Plaintiff's intended use of the discovery materials "to inform the public" to be suspect. If Plaintiffs wish to educate employers on the perils of terminating employees in violation of the law and to educate employees on the breadth of the discovery rules applicable to federal lawsuits, Plaintiffs are certainly able to do so without resort to any discovery materials produced in the instant case.
>
> While the Court appreciates that Plaintiffs sincerely believe they have been wronged and are eager to prove their case, we are concerned that they propose to try their case and seek vindication not in this Court but in the court of public opinion and to embarrass LSS management and others in the process. This Court will not countenance such intentions.

*Hodczack v. Latrobe Specialty Steel Co.*, 2009 U.S. Dist. LEXIS 147503, at *9-10 (W.D. Penn. Oct. 30, 2009); *see also Jennings v. Univ of Tennessee-Knoxville*, 2014 U.S. Dist. LEIXS 111870, at *23 (E.D. Tenn. Aug. 8, 2014) ("While the Court takes no position on whether either party, both of whom have released information to the public, have acted inappropriately under Local Rule 83.2, the Court finds

that the protective order will serve to prevent the scenario the rule seeks to prohibit while at the same time ensuring that this case is properly tried on the merits in the courtroom.").

This concern is especially compelling when the discovery at issue is in video format. As the United States District Court for the Northern District of Illinois observed in the context of the dissemination of videotaped depositions, "[v]ideo snippets may make good soundbites, but they have the potential to expose the jury pool to memorable images that may influence the resolution of the case." *Mendez v. City of Chicago*, 2019 U.S. Dist. LEXIS 202105, at *6 (N.D. Ill. Nov. 21, 2019) (citation cleaned up). To that end, the Court in *Mendez* entered a protective order prohibiting the dissemination of videos of the defendants' depositions. Specifically, the Court held "Defendants have a right to a fair trial, and thus where the deponents are named Defendants, their interest in protecting their right to a fair trial by preventing 'cut and spliced' video from tainting the jury pool outweighs the public interest in disclosing the footage." *Id.* at *7.

The same concerns obtain here. Plaintiff has been candid in her reason for opposing a protective order as relates to the footage: she wants to publicize it. That argument should be viewed with suspicion. Defendants respectfully request that the Court enter a protective order regarding the above-referenced footage to ensure that this matter tried in the Courtroom, where it belongs. *See Smith v. City of Greensboro*, 2021 U.S. Dist. LEXIS 233862, at *28-33 (M.D.N.C. Oct. 18, 2021)

WHEREFORE, Defendants City of Topeka, Officer Malcolm Gillum, Officer Justin Good, Officer Bradley Netherton, and Officer George Chiles pray that the Court entered a protective order as set forth herein, and for such other and further relief as to the Court shall seem just and proper.

Respectfully submitted,

WATKINS CALCARA, CHTD.

/s/ JEFFREY M. KUHLMAN
Jeffrey M. Kuhlman, #26865
1321 Main Street - Suite 300
P.O. Drawer 1110
Great Bend, Kansas 67530
(620) 792-8231 Fax (620) 792-2775
jkuhlman@wcrf.com
Attorney for Defendants City of Topeka, Officer Malcolm Gillum, Officer Justin Good, Officer Bradley Netherton, and Officer George Chiles


s/ NICHOLAS H. JEFFERSON
Nicholas H. Jefferson, #25530
City of Topeka Legal Department
215 SE 7th St., Room 353
Topeka, KS 66603
(785) 368-3883; (785) 368-3901 (fax)
njefferson@topeka.org
Attorneys for City of Topeka


## CERTIFICATE OF SERVICE

I hereby certify that on this 25th day of November, 2024, I electronically filed the above and foregoing Motion by using the CM/ECF system which will send a notice of electronic filing to registered counsel.

/s/ JEFFREY M. KUHLMAN
Jeffrey M. Kuhlman, #26865