UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| THE ESTATE OF TAYLOR LOWERY ) <br> BY AND THROUGH SPECIAL ) <br> ADMINISTRATOR DA'MABRIUS ) <br> DUNCAN AND L.L. THROUGH NEXT OF ) <br> FRIEND DA'MABRIUS DUNCAN, ) <br>   ) <br> Plaintiffs, ) <br>   ) Case No. 2:24-cv-02336-DDC-ADM <br> v. ) <br>   ) <br> CITY OF TOPEKA, KANSAS, et al. ) <br>   ) <br> Defendants. ) | |

## PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR PROTECTIVE ORDER

COMES NOW, Plaintiff, by and through undersigned counsel, and pursuant to Federal Rules of Civil Procedure Rule 26(c) and Local Rule 7.1(c), and hereby submits the following response to Defendants' Joint Motion for a Protective Order.

## BACKGROUND

This case arises out of the death of Taylor Lowery on October 13, 2022, in Topeka, Kansas at a Kwik Shop when he was shot 34 times and killed by officers with the Topeka Police Department. Following the shooting of Mr. Lowery, selective information was released, and statements made by various public officials and/or agencies including the Shawnee County District Attorney's office and the Kansas Bureau of Investigations ("KBI") regarding the shooting. The day of the shooting, the Kansas Bureau of Investigation released a statement which is attached as **Exhibit A**. This statement indicated that Topeka Police Department received a call regarding Mr. Lowery being inside a family member's home with a knife behaving erratically. When the officers arrived, Mr. Lowery drove away from the scene in an SUV and went to the Kwik Shop located at 4500 SW Topeka Blvd. where he allegedly held a large knife against the driver of a vehicle as he

attempted to forcibly steal the car. Officers intervened, and Lowery approached them with the knife. After officers allegedly told him to drop the knife, five officers fired striking Lowery multiple times killing him.

Several months later, the Shawnee County District Attorney's announced that the officers involved in the shooting had been exonerated following an investigation by the KBI. The District Attorney's office released a 15-page report of the investigation into the shooting of Mr. Lowery. This report detailed many purported "facts" including that Mr. Lowery attempted to carjack a vehicle with occupants inside, that he was wielding a knife and charged at officers with the knife over his head at the time he was shot, that he attempted to get off the ground and officers shot him again and that Mr. Lowery was under the influence of amphetamine, methamphetamine and cocaine when he died.  The District Attorney's office also released various still shots from the officers' body cam that responded not only to Kwik Stop but also the house where officers originally responded. The information including the clips from the officers' body cams set forth in the District Attorney's report was disseminated to various local news agencies.

Prior to filing the instant action, Plaintiff submitted requests to the City of Topeka and the Kansas Bureau of Investigations pursuant to the Kansas Open Record Acts seeking the production of documents and videos related to the shooting. Plaintiff's requests as well as requests from third parties were repeatedly denied. The only information provided to Plaintiff was the Kansas Standard Offense Report from the Kansas Bureau of Investigation attached as **Exhibit B**. Despite that fact that selective information—presumably from statements given by the officers following the shooting—as well as clips from the body cam were released by the KBI and the Shawnee County District Attorney's office, Defendants now seek to ensconce body camera footage, the

officers' video interviews, and footage of witnesses with a protective order under the auspice that Plaintiff wishes to litigate this matter in the press. Defendants' position is without merit.

## ARGUMENTS AND AUTHORITY

### A. Legal Standard.

Federal Rule of Civil Procedure 26(c) provides that "[t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." *Holman v. Future Growth*, 2024 U.S. Dist. LEXIS 137245 at 6 (D. Kan. Aug. 2, 2024). "The party seeking the protective order has the burden to show good cause for it." *Id*. The decision to enter a protective order rests with the sound discretion of the court. *Burnett v. W. Res.*, No. 95-2145-EEO, 1996 U.S. Dist. LEXIS 3641, 1996 WL 134830, at *2 (D. Kan. Mar. 21, 1996). In order to demonstrate good cause, the moving party "must submit 'a particular and specific demonstration of fact, as distinguished from stereo-typed and conclusory statements.'" *Id*. (quoting *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 102 n.16, 101 S. Ct. 2193, 68 L. Ed. 2d 693 (1981)). "Protective orders are the exception, not the rule, and appropriate reasons must be given for their entry" *United States v. Daugherty*, 2024 U.S. Dist. LEXIS 47998 (N. Okla. March 19, 2024)(quoting *U.S. v. Stone*, No. 10-20123, 2012 U.S. Dist. LEXIS 5785, 2012 WL 137746, at *3 (E.D. Mich. Jan. 18, 2012)(emphasis added)).

### B. Defendants have failed to make the requisite showing of particularized harm in support of their motion for protective order.

Defendants state that the body cam footage, witness statements and officer statements should be subject to a protective order because they contain personally identifiable information. Defendants then suggest, in conclusory fashion, that it is "standard for personally identifying information to be treated as confidential in litigation such as this" without any reference to any supporting authority. To the contrary, the Federal Rules of Civil Procedure recognizes that certain

3

personal information such as name, address and contact information is not per se confidential. Rule 26 of the Federal Rules of Civil Procedure requires disclosure of the precise information Defendants seek to make subject to a protective order regardless of whether a protective order is in place. *See* Fed. R. Civ. P. 26(a)(1)(A)(i).[1] Pursuant to Defendants analysis, a protective order would be necessary in every case to protect against the disclosure of information the Court required to be disclosed. Moreover, sufficient safe guards exist against the public dissemination of this information as the Rule 5.2 of the Federal Rules of Civil Procedure identifies what personally identifiable information may be included in any filing. The protective order sought by Defendants goes beyond even the scope of personally identifiable information that the Federal Rules of Civil Procedures recognizes may be contained in a public filing.

It is well recognized that a party cannot use a privilege as both a shield and a sword. *See J&M Indus. V. Raven Indus.*, 574 F. Supp. 3d 941 (D. Kan. 2021). Although the District Attorney and the KBI are not parties to the present action, the fundamental premise supporting this rule applies. It is axiomatic that the officers and the City of Topeka should not enjoy the benefit of shielding the facts of the shooting including their own statements, body cam footage and witness statements, when selective portions of those same facts, statements and video were released for public consumptions and for purposes of exonerating the officers and the City in the eyes of the public. Kansas law recognizes that a person who would otherwise have a privilege to refuse to disclose or to prevent another from disclosing a specified matter has no such privilege with respect to that matter if the judge finds that such person or any other person while the holder of the

---

[1] Prior to seeking a protective order in this matter, Defendants disclosed in their Rule 26 disclosures the names, addresses, and contact information for what appear to be the witnesses they refer to anonymously in their motion for protective order. However, the names of at least some of these witnesses as well as their year of birth are already a matter of public record in the Kansas Standard Offense Report available from the KBI. **See Exhibit \_\_\_\_ attached** hereto.

4

privilege has made disclosure of any part of the matter or consented to such a disclosure made by anyone. K.S.A. §60-437.

Here, the City and its agents or employees have publicly commented on and disclosed facts of the incident at issue. News agencies attributed statements as to the facts of the shooting to the Chief of Police for the Topeka Police Department.[2] It also was reported that the City Attorney for the City of Topeka, Amanda Stanley, referenced the report issues by the District Attorney's office as evidence that the officers were justified in the use of force against Taylor Lowery.[3] Defendants should not be allowed to hold out to the public that the District Attorney's report exonerates the officers, but come before this Court and claim in support of their motion for a protective order that they have "no input or control over what the District Attorney's office says or does." At a minimum, Defendants have consented to or endorsed the disclosure of information contained within the witness' statements, officers' statements and the bodycam footage, and any privilege or confidential nature of this information has been waived.

In support of their motion for protective order, Defendants also state that statements by counsel for Plaintiff during the initial scheduling conference suggest that Plaintiff's counsel intends to use footage from the bodycam video to rebut statements made by the District Attorney's office. Defendants' argument sails wide of its intended mark as Defendants make a faulty and unsupported assumption as to the purpose of that statement by counsel. Counsel for Plaintiff has no intention of litigating this matter in the court of public opinion. Contrary to Defendants' assumption, the purpose of this statement by counsel for Plaintiff was simply to highlight that any alleged "confidentiality" of the body cam video or information contained in statements by the

---

[2] https://www.kake.com/news/crime/kansas-police-fatally-shoot-suspect-during-carjacking-attempt/article_4a5e96e6-5d50-57e2-8407-0fd8646d9c2f.html
[3] https://www.cjonline.com/story/news/local/2023/02/14/topeka-attorney-wont-release-body-camera-video-of-police-shooting/69900256007/

5

officers and/or witnesses had been waived by disseminating selected information to the public prior to Plaintiff filing suit. Therefore, a protective order covering that information is not appropriate in this case.

Moreover, any alleged "tainting" of potential jurors was not and is not the result of any action by Plaintiff, but rather was the result of public disclosure of selected facts and still shots from the bodycam by the KBI, the District Attorney's office and Defendants for purposes of exonerating the officers and the City of Topeka in the eyes of the public.  Defendants' motion provides support for Plaintiff's argument. As they note, "video snippets may make good sound bites, but they have the potential to expose the jury pool to memorable images that may influence the resolution of the case." *Mendez v. City of Chicago*, 2019 U.S. Dist. LEXIS 202105, at *6 (N.D. Ill. Nov. 21, 2019).

The harm recognized by *Mendez* and highlighted by Defendants is exactly what has happened to Plaintiff and Taylor Lowery. The public was given memorable images, and selective information was released in support of the Defendants potentially tainting any jury pool. Defendants' motion seeks to enjoy the fruits of those efforts by tying Plaintiff's hands with a protective order covering the very sources of information that were used to publicly exonerate Defendants. Defendants do not seek to keep the information from the public, they seek to keep their public narrative that the officers did nothing wrong and that Taylor Lowery was wielding a knife at the time he was shot uncontradicted. Such a result frustrates the very purpose of protective orders under the Federal Rules of Civil Procedure. Defendants cannot establish any particularized and specific showing of harm if a protective order is not entered covering the officers' statements, witness statements or the body cam.

### C. Defendants have failed to narrowly tailor their request for a protective order by seeking to have all body cam footage as well as interviews of witnesses and the officers subject to the protective order.

Defendants request that the entirety of the body cam footage of the officers involved or present in the events leading up to, during and following the shooting of Taylor Lowery be subject to the protective order. Defendants also seek to have the interviews of the officers by the KBI as well as interviews of victims and witnesses subject to a protective order. In support of this expansive request, Defendants state that the bodycam footage and interviews contain personally identifiable information including that of witnesses and minors. Defendants cite three specific interactions on the bodycam footage where individuals provided personal information. The first example is Officer Chiles body camera capturing an interaction with an, as of yet, unidentified witness who provides her contact information as well as the minors with her. Defendants also state that Officer Chiles spoke to other witnesses but do not list who the alleged witnesses were, when the statements were made, the substance or contents of the statements, why their information should be confidential or what harm may come from disclosure of their statements.

Defendants set forth two other instances in the body camera footage which they contend supports all of the bodycam footage being identified as confidential and subject to a protective order. One is Officer Good's body camera which captures an interaction with an unidentified minor family member of Mr. Lowery prior to the shooting and another situation where Officer Gillum's video contains a wellness check prior to his arrival on the scene at Kwik Shop. Therefore, they argue, all of the bodycam footage and videos statements, even portions which do not contain such information, should be subject to a protective order.

As a preliminary matter, Plaintiff does not have an objection to bodycam video which contains witnesses,' victims' or the officers' social security numbers or complete dates of births

7

as being confidential consistent with Rule 5.2 of the Federal Rules of Civil Procedure. Plaintiff also does not have an objection to bodycam footage which identifies the name, address, or date of birth of any minors as being confidential. However, the facts discussed during the interviews, or the facts disclosed by the bodycam footage should not be subject to a protective order.

      Defendants fail to identify any privilege that would apply to these facts of the shooting or why the facts of the shooting should be confidential. Defendants similarly fail to identify how disclosure of the facts of the shooting would cause harm to Defendants, the witnesses, or the victims other than contradicting the carefully crafted narrative that was given to the public by the KBI and the District Attorney. Nowhere do Defendants articulate a specific or clear reason as to why the interviews and the bodycam footage in their entirety should be subject to a protective order other than "personal information being released."  However, this does not support the entry of a blanket protective order.

      Defendants also state that they are concerned about the names and information of witnesses and alleged victims being released. As noted above, Plaintiff has no objection to the redacting of date of births or social security numbers for the officers, victims, or witnesses. Nonetheless, the names of certain witnesses to this event have already been made public per the Kansas Standard Offense Report. This report is subject to the Kansas Open Records Act and any member of the public can access or request this document. Moreover, Defendants have already disclosed the address and telephone number of other witnesses in their Rule 26 disclosures as required by the Federal Rules of Civil Procedure. This information is neither privileged nor confidential. Therefore, Defendants' argument that the identify or witnesses and victims would be disclosed is moot as the protective order would not protect the identities of witnesses and/or alleged victims as this information is already available to the public.

While the Kansas Open Records Act is not controlling on this Court, it does provide guidance on whether the information Defendants seek to shroud from disclosure under a protective order are subject to the Kansas Open Records Act and therefore, should not be subject to a protective order. The Act recognizes that criminal investigation records such as the bodycam footage and interviews may be subject to disclosure when they are in the public interest, will not interfere with any prospective law enforcement action or investigation, would not reveal the identity of any confidential source, would not reveal confidential investigative techniques, would not endanger the life or physical safety of any person and do not reveal personal information of the victim of any sexual offense.

In analyzing these factors in the present matter, clearly there is a public interest in the disclosure of the information. "Where public officials thrust controversy concerning their official actions into the public spotlight and attention…a definable public interest arises to investigate that controversy and to seek a resolution of it." *Harris Enters., Inc. v. Moore,* 241 Kan. 59, 66, 734 P.2d 1083, 1089 (1987). As noted above, Defendants, the KBI and the Shawnee District Attorney have made public statements regarding the incident including exonerating the Defendants from any wrongdoing. Disclosure of the videos will not interfere with prospective law enforcement action or a criminal investigation as the District Attorney has stated that the officers involved in the shooting will not be charged. No confidential source or undercover agent was involved in the incident as police were responding to a domestic call. Additionally, Defendants have asserted that disclosure of the videos will reveal confidential investigative techniques or procedures. Finally, Defendants have not indicated that disclosure of the videos will endanger the life or physical safety of any person in support of their motion for a protective order. These factors all support the

disclosure of the bodycam video as well as interviews of witnesses, victims, and officers without being subject to a protective order.

A fairly recent decision by the District Court of Sedgwick County, Kansas provides a reasonable approach to the scope of a protective order in this matter. In *Wichita Eagle and Beacon Publishing Company, Inc. v. The City Of Wichita, Kansas*, 17-CV-2745 the district court determined whether bodycam recordings should be produced pursuant to a request under the Kansas Open Records Act.[4] On cross motions for summary judgment, the district court determined that the City acted in bad faith in not disclosing body cam video of two separate investigations. The court reasoned that disclosure of the body cam video was in the public interest because "where there is misconduct or even alleged misconduct, it is in the public interest to know what exactly happened…" In ordering the production of the body cam video, the court held that minimal necessary redactions to obscure social security numbers and dates of births was appropriate. Such an approach would be appropriate in this case, and addresses Defendants' concern that personally identifiable information would be disclosed.

WHEREFORE, Plaintiff requests that the Court enter an order denying Defendants' Motion for a Protective Order as set forth herein, or in the alternative, entering a protective order limited to social security numbers and dates of birth of the officers, witnesses and victims contained within the bodycam video or videos of interviews of witnesses, victims or the officers as well as any bodycam video which identifies the name of any minor and for any such other and further relief as this Court may deem just and proper.

---

[4] As noted above, Plaintiff as well as various news agencies requested the disclosure of the body cam footage under the Kansas Open Records Act and these requests were each denied.

10

Respectfully submitted,

*/s/William P. Denning*
William P. Denning           KS #21560
Paeten E. Denning            KS #29635
Denning Law Firm, LLC
8900 Indian Creek Parkway, Suite 210
Overland Park, KS 66210
Telephone:    (816) 702-8400
Facsimile:     (816) 702-8401
wdenning@denninglawfirm.com
pdenning@denninglawfirm.com
***ATTORNEYS FOR PLAINTIFFS***

## CERTIFICATE OF SERVICE

      I hereby certify that on this 5th day of December 2024, I electronically filed the above and foregoing by using the CM/ECF system which will send a notice of electronic filing to registered counsel.


Spencer K. Bailly, #28627
Jeffrey M. Kuhlman, #26865
WATKINS CALCARA, CHTD.
1321 Main Street – Ste. 300
P. O. Drawer 1110
Great Bend, Kansas 67530
Phone:	620-792-8231
Fax:	620-792-2775
sbailly@wcrf.com
jkuhlman@wcrf.com
*ATTORNEYS FOR DEFENDANTS*
*OFFICER GOOD, OFFICER NETHERTON,*
*OFFICER CHILES and OFFICER GILLUM*

Geoffrey L. Lydick, #27215
CITY OF TOPEKA LEGAL DEPARTMENT
215 SE 7th Street, Room 353
Topeka, KS  66603
Phone:	785-368-3883
Fax:	785-368-3901
gllydick@topeka.org
*CO-COUNSEL FOR DEFENDANTS*
*CITY OF TOPEKA*


                                           */s/ William P. Denning*
                                           Attorney for Plaintiffs