IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| DA'MABRIUS DUNCAN, as special administrator of the Estate of Taylor Lowery, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>CITY OF TOPEKA, KANSAS, et al.,<br><br>Defendants. | No. 24-2336-DDC-ADM |

**MEMORANDUM AND ORDER**

This case arises out of the shooting of Taylor Lowery ("Lowery") by Topeka, Kansas, police officers in 2022. It is now before the court on defendants' motion for entry of a protective order to govern certain video footage. (ECF 28.) As discussed in further detail below, defendants have not demonstrated good cause for a blanket protective order covering all such footage, but have sufficiently addressed birthdates and contact information for adults, and all information involving minors. The motion for protective order therefore is granted in part and denied in part.

**I.      BACKGROUND**

In the early morning hours of October 13, 2022, Topeka police officers responded to a domestic-disturbance call at a Topeka residence. Lowery was at the residence and fled. Officers followed Lowery, eventually surrounding him in a Kwik Shop parking lot. When Lowery bent over to pick up an object from the ground, multiple officers shot at him. Lowery died at the scene from gunshot wounds.

The following day, the Kansas Bureau of Investigation ("KBI") released a public statement that gave law enforcement's version of the events leading to the shooting. (ECF 32-1.) Several

months later, the Shawnee County District Attorney's Office ("DA") announced that a KBI investigation exonerated the officers involved. The DA released a 15-page report and still shots of officer body camera ("bodycam") footage to local news agencies.

On August 1, 2024, Da'Mabrius Duncan, as the special administrator of Lowery's estate, and L.L., Lowery's minor daughter and heir-at-law, through Da'Mabrius Duncan as her next friend (together, "plaintiffs"), filed this action against nine Topeka police officers ("the officer defendants") and the City of Topeka ("the City") (collectively, "defendants"). Plaintiffs assert excessive-force, assault-and-battery, and wrongful-death claims against the officer defendants; and a 42 U.S.C. § 1983 claim against the City. (ECF 1.)

On November 14, the court convened a scheduling conference. (ECF 27.) During the conference, the parties alerted the court that they disagreed about the need for and scope of a protective order to govern discovery in this case. The court set the matter for motion briefing. On November 25, defendants filed the instant motion for entry of a protective order to govern various categories of discoverable information. (ECF 28.) Plaintiffs do not oppose the entry of a protective order designating as confidential defendants' personnel files and documents containing personally identifiable information of any defendant, witness, victim, or third party. But plaintiffs oppose defendants' request for a blanket protective order designating as confidential three types of video footage: (1) bodycam footage of the officers involved or present in the events leading up to, during, and following Lowery's shooting; (2) KBI footage of interviews of police officers; and (3) footage of interviews of victims and witnesses.

## II.     LEGAL STANDARDS

Generally, the Federal Rules of Civil Procedure do not limit "what parties may do with information they acquire through the discovery process." *Williams v. City of Burlington*, No. 3:19-

cv-00043-SMR-HCA, 2020 WL 11027939, at *2 (S.D. Iowa, June 17, 2020); *see also Okla. Hosp. Ass'n v. Okla. Pub. Co.*, 748 F.2d 1421, 1424 (10th Cir. 1984) (recognizing that "parties to litigation have a constitutionally protected right to disseminate information obtained by them through the discovery process absent a valid protective order"); *Jepson, Inc. v. Makita Elec. Works, Ltd.*, 30 F.3d 854, 858 (7th Cir. 1994) ("Absent a protective order, parties to a lawsuit may disseminate materials obtained during discovery as they see fit."). "A party that wants to secure limits on the downstream use of discovery information must take affirmative steps to achieve that result." *Williams*, 2020 WL 11027939, at *2 (internal citation and modification omitted). Typically, a party does this by obtaining a protective order that places limits on the otherwise free use of discovered information. *Id.*

Under Federal Rule of Civil Procedure 26(c)(1), the "court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." "The party seeking a protective order has the burden to show good cause for it." *Layne Christensen Co. v. Purolite Co.*, 271 F.R.D. 240, 244 (D. Kan. 2010). To satisfy the good-cause standard, the party must make "a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements." *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 102 n.16 (1981). Rule 26(c)(1)'s good-cause standard is "highly flexible, having been designed to accommodate all relevant interests as they arise." *Rohrbough v. Harris*, 549 F.3d 1313, 1321 (10th Cir. 2008). "Rule 26(c) confers broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required." *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984).

**III.   ANALYSIS**

Defendants first argue that good cause exists for a protective order allowing them to designate as confidential the three categories of video footage because the footage contains "personally identifiable information of parties, witnesses, victims of crimes, or innocent third parties," including some minor children. (ECF 28, at 2.) Defendants seem to define "personally identifiable information" as names, contact information/addresses, and dates of birth. (*Id.* at 3.) They argue that "[g]ood cause to protect this information exists because personally identifiable information can be used to subject individuals to identity theft, harassment, or embarrassment." (*Id.* at 1.) Plaintiffs do not oppose the redaction of footage to remove all dates of birth, as well as the names and addresses of minors. (ECF 32, at 7-8.) But plaintiffs note that names and contact information of adult witnesses and parties are generally not given confidential status in court records.

The court finds good cause to allow defendants to designate as confidential portions of the footage containing a person's contact information and dates of birth. When such personal information is not kept confidential, the owner is placed at risk of identity theft and harassment. The court finds there is a particular risk here because this case involves a matter that could be politically charged or invoke strong feelings against persons involved, leading others to target them for harm or harassment. Although plaintiffs note that such personal information is not automatically redacted from court filings, the legal standards for sealing information in court filings (i.e., filings that are subject to the public's presumed right of access because they are considered in judicial decision making) are significantly stricter than for permitting a party to assert a confidential designation over information exchanged in discovery. *See* D. Kan. Form Protective Order at ¶ 7.

To be clear, at this procedural juncture, the court is *not* addressing whether such information may or may not be disclosed to the public. Rather, the court is simply ruling that, as a threshold matter, defendants may designate this personal information "confidential" when produced in discovery under the provisions of the court's standard, form protective order. Pursuant to paragraph 8 of that standard order, any party has a right to petition the court to remove a confidential designation. *Id.* at ¶ 8. The court will entertain any future motion to de-designate such personally identifiable information in a more particularized context.

Second, defendants assert, and plaintiffs agree, that there is good cause to allow the information and/or images of minors to be designated confidential. The court agrees that defendants have made a threshold showing of good cause to maintain, under a blanket protective order, the confidentiality of portions of footage showing a minor's personally identifiable information and/or image. *See Gillard v. Boulder Valley Sch. Dist. Re.-2*, 196 F.R.D. 382, 386 (D. Colo. 2000) (finding good cause to enter blanket protective order allowing student records to be maintained as confidential).

Finally, defendants argue there is good cause for the entry of a protective order governing the three categories of footage because "the footage will be used for improper purposes." (ECF 28, at 4.) Defendants hypothesize that plaintiffs "apparently" want to use the footage to "publicly rebut" the DA's report exonerating the officer defendants and finding their use of force justified. (*Id.*) Defendants assert that "[f]ederal courts have the discretion to enter a protective order to ensure that a matter is tried in the courtroom, and not in the court of public opinion." (*Id.* at 5.)

Plaintiffs respond that their counsel "has no intention of litigating this matter in the court of public opinion." (ECF 32, at 5.) Yet they insist defendants should not be permitted to "enjoy the fruits" of public disclosure of selected facts and still shots by the KBI and DA, while "tying

5

Plaintiff's [sic] hands with a protective order covering the very sources of information that were used to publicly exonerate Defendants." (*Id.* at 6.) Plaintiffs assert that defendants have not established any particularized and specific showing of harm should a protective order not cover *all* portions of the video footage.

  The court agrees with plaintiffs that, in this case, defendants have made no particularized showing that they will be harmed if the remaining information in the footage is not kept confidential. For example, unlike the case they rely upon, defendants have not demonstrated that plaintiffs or their counsel are actively giving press conferences and tainting the jury pool so as to prevent defendants from receiving a fair trial. *See Mendez v. City of Chicago,* No. 18 CV 5560, 2019 WL 6210949, at *3 (N.D. Ill. Nov. 21, 2019) (finding good cause to enter a protective order prohibiting release of defendants' videotaped depositions to prevent "cut and spliced" video from tainting the jury pool). The only portions of the footage defendants discuss in their motion are those in which officers and witnesses provide personal information, and that information is addressed separately above. Defendants do not explain their theory that release of any other part of the footage could taint the jury pool. In other words, defendants do not state what, if any, other portions of the video footage could cause a jury to view them in a negative light. Moreover, to the extent officer bodycam footage is at issue, courts tend to exclude such footage from protective orders based on the public's strong interest in transparency of public incidents. *See, e.g., Williams*, 2020 WL 11027939, at *8 (declining to apply protective order to officer bodycam footage and allowing plaintiffs to publicly release the footage to "allow the public to see and hear exactly what [the officer] did throughout and after the crucial events"); *Dominguez v. City of Los Angeles*, No. CV 17-4557-DMG, 2018 WL 6333661, at *4 (C.D. Cal. Apr. 23, 2018) (removing from protective order bodycam videos worn by officers during shooting); *Barnett v. City of Laurel*, No. 2:18-CV-

00092-KS-MTP, 2018 WL 10498653, at *2 (S.D. Miss. Aug. 10, 2018) ("Body cam footage of an alleged excessive force incident is highly public in nature, and allowing public dissemination of the video outweighs any particularized harm to the Defendants."); *Harmon v. City of Santa Clara*, 323 F.R.D. 617, 625 (N.D. Cal. 2018) (recognizing that "police body cameras can be useful tools to encourage transparency and promote public awareness of police activity").

In summary, defendants have not met their burden of demonstrating good cause for a blanket protective order deeming confidential, *in whole*, (1) bodycam footage of the officers involved or present in the events leading up to, during, and following Lowery's shooting; (2) KBI footage of interviews of police officers; and (3) footage of interviews of victims and witnesses. However, the court permits defendants to designate limited portions of footage containing any person's contact information or birthdate and/or information or images of minors as confidential, pursuant to the terms of the court's standard form protective order.

**IT IS THEREFORE ORDERED** that defendants' motion for entry of a protective order (ECF 28) is granted in part and denied in part, as set forth above. The parties may submit a jointly proposed protective order, incorporating the rulings made herein and governing all discovery in the case, by **December 20, 2024**. A pre-approved form protective order is available on the court's website at https://ksd.uscourts.gov/civil-forms.

**IT IS SO ORDERED.**

Dated December 13, 2024, at Kansas City, Kansas.

s/ Angel D. Mitchell
Angel D. Mitchell
U.S. Magistrate Judge