## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

THE ESTATE OF TAYLOR LOWERY ) 
BY AND THROUGH SPECIAL )
ADMINISTRATOR DA'MABRIUS )
DUNCAN AND L.L. THROUGH NEXT OF )
FRIEND DA'MABRIUS DUNCAN, )
                                     )
       Plaintiffs, )
                                     )   **Case No. 2:24-cv-02336-DDC-ADM**
v. )
                                     )   **JURY TRIAL DEMANDED**
CITY OF TOPEKA, KANSAS, )
                                     )
Serve at: City Clerk, Brenda Younger )
          215 SE 7th St. Rm. 166 )
          Topeka, KS 66603 )
                                     )
OFFICER MALCOLM GILLUM, )
                                     )
Serve at: 215 Kansas Ave )
          Alma, KS 66401 )
                                     )
OFFICER JUSTIN GOOD, )
                                     )
Serve at: 320 S. Kansas Avenue )
          Suite 100, Topeka, KS 66603 )
                                     )
OFFICER BRADLEY NETHERTON, )
                                     )
Serve at:  320 S. Kansas Avenue )
          Suite 100, Topeka, KS 66603 )
                                     )
SERGEANT SCOTT MCENTIRE, )
                                     )
Serve at: 320 S. Kansas Avenue )
          Suite 100 Topeka, KS 66603 )
                                     )
DETECTIVE ALEX WALL )
       Serve at: 320 S. Kansas Avenue )
          Suite 100 Topeka, KS 66603 )
                                     )
       Defendants. )

## FIRST AMENDED COMPLAINT

Plaintiff Da'Mabrius Duncan, as the Special Administrator of the Estate of Taylor Lowery and L.L., a minor, by and through her next friend Da'Mabrius Duncan, and for her causes of action against Defendants Justin Good, Bradley Netherton, Malcolm Gillum, Sergeant Scott McEntire, Detective Alex Wall, and the City of Topeka and state and allege as follows:

## Parties

1.      Plaintiff Da'Mabrius Duncan has been appointed as the Special Administrator of the Estate of Taylor Lowery in Case No. SN-2023-PR-000481, District Court of Shawnee County, Kansas.  Da'Mabrius Duncan is an individual over the age of 18 and is a resident of Shawnee County, Kansas.

2.      Plaintiff L.L. is the surviving daughter of Decedent Taylor Lowery and is an heir at law to Taylor Lowery, entitled to bring a wrongful death action on behalf of Taylor Lowery's heirs pursuant to K.S.A. §60-1902 and K.S.A. §59-506.  L.L. is a resident of the State of Kansas. Da'Mabrius Duncan is the mother of L.L. and has been appointed as the next friend of L.L. for purposes of prosecuting this action.

3.      Defendant Officer Justin Good (hereinafter "Officer Good") was at all relevant times a police officer with the Topeka, Kansas Police Department.  At all times relevant hereto, Officer Good was acting in the course and scope of his employment with the City of Topeka and was acting under the color of state law.  Upon information and belief, Officer Good resides in Shawnee County, Kansas

4.      Defendant Officer Bradley Netherton (hereinafter "Officer Netherton") was at all relevant times a police officer with the Topeka, Kansas Police Department.  At all times relevant hereto, Officer Netherton was acting in the course and scope of his employment with the City of

Topeka and was acting under the color of state law.  Upon information and belief, Officer Netherton resides in Shawnee County, Kansas.

5.      Defendant Officer Malcolm Gillum (hereinafter "Officer Gillum") was at all relevant times a police officer with the Topeka, Kansas Police Department.  At all times relevant hereto, Officer Gillum was acting in the course and scope of his employment with the City of Topeka and was acting under the color of state law.  Upon information and belief, at the time of the alleged acts Officer Gillum was an officer in training with the Topeka Police Department.  Upon information and belief, Officer Gillum resides in Wabaunsee County, Kansas.

6.      Defendant Sergeant Scott McEntire (hereinafter "Sergeant McEntire") was at all relevant times police officers with the Topeka, Kansas Police Department. .  At all times relevant hereto, Sergeant McEntire was acting in the course and scope of his employment with the City of Topeka and was acting under the color of state law.  Upon information and belief, at the time of the alleged acts Sergeant McEntire was a Sergeant with the Topeka Police Department. Upon information and belief, Sergeant McEntire resides in Shawnee County, Kansas.

7.      Defendant Detective Alexander Wall (hereinafter "Detective Wall") was at all relevant times police officers with the Topeka, Kansas Police Department. .  At all times relevant hereto, Detective Wall was acting in the course and scope of his employment with the City of Topeka and was acting under the color of state law.  Upon information and belief, at the time of the alleged acts Detective Wall was a Detective with the Topeka Police Department. Upon information and belief, Detective Wall resides in Shawnee County, Kansas.

8.      Officer Good, Officer Netherton, Detective Wall, Officer Gillum, Sergeant McEntire are collectively referred to as the "Officer Defendants."

9.     At all relevant times, the City of Topeka (herein after the "City") had responsibility for the Topeka Police Department as well as for the officers who serve in that department including the Officer Defendants.  The City had the full responsibility of managing the Topeka Police Department and more specifically, the hiring, promoting, training, supervising, disciplining, and firing of employees of the Topeka Police Department including the Officer Defendants.

10.     Defendant City is a municipality located in Shawnee County, Kansas.  Defendant City operated and had responsibility for the Topeka Police Department.  Defendant City is being sued for the actions of its employees who were operating in their official capacity pursuant to 42 U.S.C. §1983.  The City can be served by serving the City Clerk, Brenda Younger, 215 SE 7th St. Rm. 166, Topeka, Kansas 66603.

## Jurisdiction and Venue

11.     Plaintiffs bring this action due to the wrongful death and violation of the deceased Taylor Lowery's civil rights under 42 U.S.C. §1983, 42 U.S.C. §1988, the Fourth Amendment and the Fourteenth Amendment to the United States Constitution as well as similar provisions of the Constitution of the State of Kansas when Taylor Lowery was shot and killed by the Officer Defendants in Topeka, Kansas.

12.     Jurisdiction is conferred by 28 U.S.C. §1343 which provides for original jurisdiction of this Court in any civil action to redress the deprivation under color of state law, statute or ordinance, regulation, custom or usage of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens and to recover damages under any Act of Congress providing for protection of civil rights. Plaintiffs' actions for damages are authorized by 42 U.S.C. §1983, 42 U.S.C. §1988, the Fourth Amendment and the Fourteenth Amendment to the United States Constitution.

13.     Plaintiffs hereby request supplemental jurisdiction of their state law claims pursuant to 28 U.S.C. §1367 as Plaintiffs' state law claims are so related to the claims giving rise to original jurisdiction in this Court that they form part of the same case or controversy under Article III of the United States Constitution.

14.     Venue is proper in this Court pursuant to 28 U.S.C. §1391(a)(2) because the events or omissions giving rise to Plaintiffs' claims occurred in Kansas.

15.     In compliance with the Kansas Tort Claims Act, (K.S.A § 75-6101 and K.S.A § 12-105b(d)) Plaintiffs provided notice to the City of Topeka about their claims and received no response from the City.  The City confirmed receipt of Plaintiffs' claim on November 20, 2023. Plaintiffs' 120-day period set forth by the statue expired on March 15, 2024.

<u>**Factual Allegations**</u>

16.     On or about October 13, 2022, Topeka police officers were dispatched to a residence located at 4842 S. Topeka Blvd. #6, Topeka, Kansas following a 911 call reporting a domestic disturbance at the residence.

17.     Upon information and belief, the woman inside the residence indicated that her brother had allegedly taken a substance and was not acting normal so she was concerned and wanted him out of her house.

18.     During the phone conversation with the 911 dispatcher, the woman indicated multiple times that she did not want the officers to hurt her brother but that she wanted him out of her house.

19.     When the dispatcher asked the woman if the man was armed, she told the dispatcher that she did not want to tell them whether he had a weapon because she did not want the officers

to shoot him. The 911 dispatcher indicated that would not happen and the woman stated that her brother was using a knife to try to pick a lock to acquire her car keys.

20.     Upon information and belief, the woman never indicated that her brother was being violent or threating anyone with the knife.

21.     Upon information and belief, between 12 a.m. and 1 a.m., two Topeka police officers arrived at the residence and knocked on the front door.

22.     Upon information and belief, the officers responding to the call were Officer Good and Officer George Chiles.

23.     Upon information and belief, there was no response at the door so Officer Good began attempting to kick down the door.

24.     Upon information and belief, a minor child opened the door and asked the officers what was going on and walked out of the house. Officer Good and Officer Chiles then saw Taylor Lowery attempt to leave out a backdoor of the house.

25.     Upon information and belief, Officer Good and Officer Chiles chased Taylor Lowery around the home.

26.     Upon information and belief, as Taylor Lowery was outside of the home standing in the street he was holding a knife and wrench and began walking around slowly.

27.     Upon information and belief, there were no individuals near Taylor Lowery.

28.     Officer Chiles and Officer Good held Taylor Lowery at gunpoint instructing Taylor Lowery to drop the knife.

29.     Upon information and belief, the kitchen knife and wrench were clearly visible in Taylor Lowery's hands.

30.    Taylor Lowery then walked back towards the home and entered through the open front door.

31.    After Taylor Lowery entered the home, Officer Good and Officer Chiles began kicking in the door again.

32.    After kicking in the door to gain entry into the residence, Officer Good and Officer Chiles entered the residence and a woman from the residence ran outside of the home.

33.    Upon information and belief, Officer Good and Officer Chiles found Taylor Lowery in the back of the house near the back door.

34.    Taylor Lowery exited the residence and got into a black SUV parked in the driveway of the home.

35.    Upon information and belief, at no time did Taylor Lowery threaten or harm Officer Good or Officer Chiles or demonstrate any violent or aggressive action toward Officer Good or Officer Chiles.

36.    Upon information and belief, at no time did Taylor Lowery make contact with any individuals, lunge at anyone, or make any verbal threats.

37.    Upon information and belief, Taylor Lowery was never in striking distance of Officer Chiles and Officer Good.

38.    Upon information and belief, at no time during this pursuit did Officer Good or Officer Chiles discharge their service weapon.

39.    As Taylor Lowery climbed into the vehicle and backed out of the driveway, Officer Chiles and Officer Good continued to hold their weapons and as Taylor Lowery drove away they ran to their patrol vehicles.

40.     Lowery drove the SUV to the Kwik Shop located at 4500 SW Topeka Blvd, Topeka, Kansas.

41.     Upon information and belief, Officer Chiles and Officer Good pursued Lowery in their police cruiser with lights on.

42.     As the officers left the property, Officer Good radioed that we are going to have an aggravated assault on a law enforcement officer.

43.     Upon information and belief, while at the residence neither Officer Good nor Officer Chiles were harmed, attacked, or injured by Lowery.

44.     Upon information and belief, there was a signal 13 over the radio, which is a signal stating that an officer is in distress or is need of assistance, and it is given the highest priority.

45.     Upon information and belief, Sergeant McEntire heard the code 13 and turned on his emergency lights and drove towards the scene.

46.     Upon information and belief, Officers Netherton and Officer Gillum were on another call for a domestic disturbance when they responded to the signal 13.

47.     Upon information and belief, Lowery drove approximately a half a mile down the to the Kwik Shop and exited his vehicle.

48.     Upon information and belief, Sergeant McEntire turned off his lights as he saw Taylor Lowery's car and followed behind him.

49.     Upon information and belief, as Lowery arrived at the Kwik Shop, Sergeant McEntire and Detective Wall followed behind.

50.     Upon information and belief, Lowery attempted to run towards a parked car as he exited the SUV.

51.    Upon information and belief, no individual was harmed by Taylor Lowery at the Kwik Shop.

52.    Upon information and belief, Sergeant McEntire and Detective Wall were not wearing body cameras.

53.    Upon information and belief, Detective Wall radioed that he believed Taylor was committing a carjacking.

54.    Upon information and belief, Sergeant McEntire and Detective Wall parked their car behind the vehicle Taylor was near.

55.    Upon information and belief, Sergeant McEntire and Detective Wall exited their vehicle with their weapons drawn.

56.    Upon information and belief, Sergeant McEntire and Detective Wall got out of the vehicle and saw Taylor running and discharged their weapon at Taylor.

57.    Upon information and belief, Taylor Lowery was not near Sergeant McEntire, Detective Wall, an individual, or a vehicle at the time they discharged their firearms.

58.    Upon information and belief, Taylor Lowery did not make physical contact or aggressive actions towards Sergeant McEntire or Detective Wall prior to them discharging their weapons.

59.    Upon information and belief, Taylor was moving forward towards the gas pumps and no individuals were near him.

60.    Upon information and belief, Taylor Lowery fell in the parking lot dislodging the knife and wrench from his hands as Detective Wall and Sergeant McEntire shot at him.

61.     According to statements released or provided by the Topeka Police Department and/or District Attorney Michael Kagay to news outlets after this incident, the Officer Defendants successfully disarmed Lowery of the knife in the Kwik Shop parking lot.

62.     Upon information and belief, Officer Good and Officer Netherton arrived on the scene and ran up with their service weapons drawn seconds after Sergeant McEntire and Detective Wall discharged their firearms.

63.     Upon information and belief, as Officer Netherton arrived at the scene, Taylor Lowery was on the ground and did not have anything in his hands.

64.     Upon information and belief, Officer Gillum arrived just seconds after Officer Netherton.

65.     Upon information and belief, as officer Good arrived on the scene, there were multiple officers surrounding Taylor Lowery and he had nothing in his hands.

66.     Upon information and belief, the wrench was in the middle of the ground near the officers and Taylor Lowery, specifically a socket wrench.

67.     Upon information and belief, Lowery never possessed the knife again after the Officer Defendants successfully disarmed Lowery in the Kwik Shop parking lot.

68.     Upon information and belief, the knife was next to Officer Gillum and Officer Netherton's foot on the ground.

69.     Upon information and belief, the knife was clearly visible on the ground and was far out of reaching distance from Taylor Lowery.

70.     Upon information and belief, Sergeant McEntire attempted to bump/grab Taylor Lowery.

71.    At the time Sergeant McEntire tried to physically grab Taylor Lowery there was no wrench, knife, or object in Taylor's hand.

72.    Sergeant McEntire made physical contact with Lowery by physically bumping Lowery causing Lowery to lose his balance and stumble backwards.

73.    Upon information and belief, Lowery bent over to pick up the wrench that had been dislodged from his hand.

74.    Upon information and belief, as Lowery took a slight step backwards away from the officers and was not able to come to a full standing position, Defendant Netherton began discharging his weapon.

75.    Upon information and belief, the only command Officer Netherton gave Taylor was to get on the ground as he began discharging his weapon.

76.    Upon information and belief, after Officer Netherton discharged his weapon Officers Good, Officer Gillum, Detective Wall, and Sergeant McEntire discharged their weapons at Taylor.

77.    Upon information and belief, Officer Netherton was on the scene for less than thirteen seconds before he began to discharge his service weapon.

78.    Upon information and belief, at the time Taylor Lowery was shot, there were multiple officers on each side of Lowery giving commands.

79.    Upon information and belief, Taylor Lowery did not charge, take steps toward, or take any aggressive actions towards the officers at the time they discharged their weapon.

80.    Upon information and belief, Taylor Lowery never said a word to the officers at Kwik Shop.

81.    No members of the public were near Lowery at the time he was shot.

82.    Lowery was not facing Officer Gillum or Officer Netherton, did not pose a threat to the Officer Defendants and did not take any aggressive actions toward Officers prior to discharging their service weapons.

83.    Upon information and belief, the only physical contact made with Taylor Lowery was when Sergeant McEntire intentionally bumped Taylor when Taylor was unarmed.

84.    Contrary to reports from and/or statements by the City of Topeka, upon information and belief, Lowery did not raise a knife above his head and charge the Officer Defendants at the time Officers began discharging their service weapons shooting Lowery.

85.    Upon information and belief, Officer Gillum was on his probationary period as a new officer.

86.    Upon information and belief, Taylor Lowery suffered 41 gunshot wounds.

87.    Upon information and belief, at the time the Officers discharged their weapons, they knew that Lowery was not holding a knife.

88.    Upon information and belief, Lowery did not point a weapon at the Officer Defendants and Lowery did not represent an imminent threat to the safety of the public or the Officer Defendants at the time the Officer Defendants began shooting at Lowery.

89.    Lowery was pronounced dead at the scene.

90.    Upon information and belief, Taylor Lowery was either unarmed and/or was holding a wrench at the time he was shot and killed.

91.    Upon information and belief, after shooting Taylor Lowery Defendants confirmed and/or stated at the scene that Lowery did not have any lethal weapons.

12

92.     Upon information and belief, the wrench in Taylor Lowery's hand was clearly visible and officers instructed him to drop the wrench so they could provide him with medical assistance.

93.     Upon information and belief, the entire encounter between the Officer Defendants and Lowery, from the time they arrived at the residence until Mr. Lowery was shot on the ground, was approximately 6 minutes.

94.     Deadly force is reasonable only if the officer had probable cause to believe that the suspect posed a significant threat of death or serious physical injury to the officer or others.  There was not probable cause to believe that Taylor Lowery posed a significant threat of death or serious physical injury to the officers or others.

95.     Upon information and belief, each officer at the scene was carrying non-lethal force including but not limited to pepper sprays and tasers but did not attempt to use non-lethal force prior to shooting Mr. Lowery.

96.     Upon information and belief, no Topeka Police Officer ever communicated that Taylor Lowery had a wrench even though multiple officers had observed Taylor Lowery with a wrench.

97.     Upon information and belief, Taylor Lowery only ran from the police on October 13, 2022.

## COUNT I - EXCESSIVE USE OF FORCE IN VIOLATION OF THE FOURTH AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION

98.     Plaintiffs hereby incorporate by reference the allegations and averments contained in Paragraphs 1 through 97 as though fully set forth herein.

99.     The Officer Defendants' conduct as described above constitutes actions that shock the conscious under the Fourth and Fourteenth Amendments of the United States Constitution and

13

violated clearly established constitutional and statutory rights. The conduct of the Officer Defendants was objectively unreasonable.

100.    Acting within the course and scope of their employment with the Topeka Police Department and under color of state law, the Officer Defendants without just cause or provocation and with the intent to cause serious bodily harm or death, assaulted, battered, and killed Taylor Lowery by discharging their firearms and shooting Mr. Lowery resulting in 41 gunshot wounds and his death.

101.    Instead of taking appropriate measures to assess the situation, the Officer Defendants shot Taylor Lowery multiple times killing him.

102.    The Officer Defendants lacked probable cause to kill Taylor Lowery because Taylor Lowery did not pose significant threat of death or serious physical injury to the Officer Defendants or the public.

103.    In drawing their firearms and shooting and killing Taylor Lowery, the Officer Defendants used more force than was reasonably necessary.

104.    The Officer Defendants violated Taylor Lowery's Fourth and Fourteenth Amendment rights in one or more of the following respects:

      a. The use of deadly force was excessive and not objectively reasonable as Taylor Lowery did not pose a significant threat to the Officer Defendants or the public and the Officer Defendants shot and killed him;

      b. The use of force was excessive as at no time did Taylor Lowery threaten the Officer Defendants and did not commit a felony or misdemeanor which warranted the use of deadly force.

105.    The conduct of the Officer Defendants as described above deprived Taylor Lowery of his right to be secure in his person against unreasonable searches and seizures under the Fourth Amendment to the United States Constitution and his right not to be deprived of life, liberty, or property without due process of law and to be accorded equal protection of the law as guaranteed to him under the Fourteenth Amendment to the United States Constitution.

106.    As a direct and proximate result of the unlawful conduct of the Officer Defendants, Taylor Lowery was caused to suffer severe pain, mental anguish, and an agonizing death.  As a result of Taylor Lowery's death, Plaintiff L.L. has been deprived of the Taylor Lowery's services, society, companionship, comfort, instruction, guidance, counsel, training, support, love, affection, and income.

107.    The conduct of the Officer Defendants was reckless, malicious, wanton, willful and violated Taylor Lowery's constitutional rights and an award of punitive damages is necessary to punish the Officer Defendants and to deter others from the same or similar transgression in the future.

108.    The Officer Defendants knew that Taylor Lowery had a clearly established right to be secure in his person against unreasonable seizures under the Fourth Amendment of the United State Constitution and his right not be deprived of life and that by shooting Lowery when he was bent over and was not a significant threat to the Officer Defendants or the public, the Officer Defendants were depriving him of those rights.

WHEREFORE, Plaintiffs request judgment for general, special, and punitive damages in a sum that this Court may deem just and reasonable, for costs of the suit and attorneys' fees, and for such other relief as the Court may deem just and equitable.

## COUNT II - WRONGFUL DEATH

**(Officer Defendants Good, Netherton, Detective Wall, Gillum, and Sergeant McEntire)**

109.    Plaintiffs hereby incorporate by reference the allegations and averments contained in Paragraphs 1 through 108 as though fully set forth herein.

110.    Plaintiff L.L., by and through her next friend, maintains this action for wrongful death pursuant to K.S.A. §60-1901 *et. seq.* on behalf of all the heirs at law of Taylor Lowery who have sustained loss by reason of his death.

111.    The Officer Defendants intentionally discharged their firearms without justification causing an unreasonable apprehension of harm and death to Taylor Lowery.

112.    The Officer Defendants fired their weapons at Taylor Lowery without justification, intentionally and wrongfully causing the death of Taylor Lowery.

113.    The Officer Defendants caused an offensive bodily contact with Taylor Lowery by shooting and killing him.

114.    The Officer Defendants were not acting in lawful self-defense.

115.    In drawing their firearms and shooting Taylor Lowery, the Officer Defendants used more force than was reasonably necessary.

116.    The use of force by the Officer Defendants was unjustified in that they failed to make any attempt to use non-lethal means to resolve the situation.

117.    As a direct result of this intentional tort by the Officer Defendants, Plaintiffs have sustained damage including but not limited to loss of consortium, companionship, comfort, instruction, guidance, counsel, training, and support in addition to funeral expenses for the Taylor Lowery.

118.    Taylor Lowery also endured pain and suffering between the time of the first bullet penetrating his body and the time of his death.  Plaintiffs are entitled to a claim for damages based upon this pain and suffering, all pursuant to K.S.A. §60-1901 *et seq.*

119.    The Officer Defendants actions were willful, wanton, or malicious and constituted gross misconduct, and demonstrated a conscious and reckless disregard for the rights of Plaintiffs and Taylor Lowery and an award of punitive damages is necessary to punish the Officer Defendants and to deter others from the same or similar transgression in the future.

WHEREFORE, Plaintiffs request judgment for general, special, and punitive damages in a sum that this Court may deem just and reasonable, for costs of the suit and attorneys' fees, and for such other relief as the Court may deem just and equitable.

### COUNT III - DELIBERATELY INDIFFERENT POLICIES, PRACTICES, CUSTOMS, TRAINING AND SUPERVISION IN VIOLATION OF THE FOURTH AND FOURTEENTH AMENDMENT
#### (The City of Topeka)

120.    Plaintiffs hereby incorporate by reference the allegations and averments contained in Paragraphs 1 through 119 as though fully set forth herein.

121.    The City had in effect, both before and at the time of the events alleged in this Complaint, policies, practices, patterns of conduct or customs which operated to deprive Taylor Lowery of his constitutional rights.

122.    The City is liable under 42 U.S.C. §1983 because their policies, customs and practices including the retention, training, discipline and supervision of law enforcement encourage and allowed the Officer Defendants to violate the constitutional rights of Taylor Lowery and demonstrates deliberate indifference to Taylor Lowery's right to be free from unreasonable searches and seizures under the Fourth Amendment to the United States Constitution and his right not to be deprived of life, liberty or property without due process of law and to be accorded equal

protection of the law as guaranteed to him under the Fourteenth Amendment to the United States Constitution.

123.    All the acts or omissions of the Officer Defendants took place under color of state law pursuant to, acting upon, and in concert with the policies, practices, procedures, patterns, decisions, instructions, orders and customs of the City and its members.  The City is liable for damages caused by their respective employees and the Officers Defendants' intentional, wrongful, reckless, and negligent acts or omissions while the employees and officers were acting under color of state law and while they were acting within the course and scope of their employment with the City.  All these acts or omissions took place under circumstances where the City, as well as the Officer Defendants, are liable as governmental entities, employees and sworn law enforcement officers in the State of Kansas.  The City's liability is based upon allegations described in this Complaint all of which demonstrate patterns of behavior and deliberate indifference to the issues raised in this Complaint and to the rights of citizens, all of which led to deprivations of rights, privileges and immunities secured by the federal and states constitution as well as federal and state laws.

124.    The City engaged in unlawful and unconstitutional policies, practices, and customs, including but not limited to, the following:

    a.  Violation and deprivation of constitutional rights as set forth in this Complaint;

    b.  Inadequate training and instruction of employees on the proper use of police power, proper seizure, proper searches, use of deadly force and investigation of alleged crime in the State of Kansas;

    c.  Failing to supervise and monitor officers in training;

d.  Inadequate supervision of employees as to the proper use of police power, proper seizures, proper searches, use of deadly force and investigation of crime in the State of Kansas;

e.  Inadequate discipline of employees as to the proper use of police power, proper seizures, proper searches, use of deadly force and investigation of crime in the State of Kansas;

f.  Inadequate supervision, training, and retention with resulting poor personnel decisions as to employees regarding the proper use of police power, proper seizure, proper searches, use of deadly force and investigation of alleged crime in the State of Kansas;

g.  Failure to take significant steps to prevent known risk of excessive use of force and improper seizure;

h.  Failure to properly train officers to de-escalate instead of escalating situations;

i.  Failure to adopt and properly implement policies regarding the de-escalation;

j.  Deliberate indifference to and conscious disregard for the high risk that law enforcement officers would improperly use their influence as law enforcement officers and/or fail to protect against such improper influence in violation of Taylor Lowery's rights; and,

k.  Failure to take significant steps to prevent a known risk of the wrongful use of deadly force.

125.    These actions, omissions, policies, practices, procedures, patterns, decisions, orders and customs of the City were the cause of constitutional and other violations described in this Complaint.  These interrelated policies, practices, and customs, separately and together, were

implemented intentionally to deprive individuals including Taylor Lowery of their constitutional rights or, at the very least, were implemented with recklessness or deliberate indifference to the rights of individuals and were a direct and proximate cause of the constitutional violations as set forth in this Complaint.

126.     The City ratified and implemented, before and during the relevant period, each of the policies, practices, patterns of conduct and customs described herein.     The City's custom/practice was so well settled as to constitute custom or usage with force of law, authorizing the use of deadly force was a moving force of the shooting, injuries, and death of Taylor Lowery.

127.     At the time of the events described in this Complaint, Taylor Lowery had a clearly established constitutional right under the Fourth Amendment to be free from unreasonable search and seizure and his right to be free from excessive force by law enforcement guaranteed to him under the Fourteenth Amendment to the United States Constitution.

128.     Defendants knew that Taylor Lowery had a clearly established right to be secure in his person against unreasonable seizures under the Fourth Amendment of the United State Constitution and his right not be deprived of life and that by shooting Mr. Lowery when he was unarmed they were depriving him of those rights.

129.     As a direct result of the Defendants' conduct, Plaintiff is entitled to monetary relief for her damages.

WHEREFORE, Plaintiffs request judgment for general, special, and punitive damages in a sum that this Court may deem just and reasonable, for costs of the suit and attorneys' fees, and for such other relief as the Court may deem just and equitable.

### COUNT IV – ASSAULT AND BATTERY
**(The Officer Defendants)**

130.    Plaintiffs hereby incorporate by reference the allegations and averments contained in Paragraphs 1 through 129 of her Complaint as though fully set forth herein.

131.    Defendants Officer Good, Officer Gillum, Officer Netherton, Detective Wall, and Sergeant McEntire purposely and intentionally shot at Taylor Lowery resulting in his death.

132.    The Officer Defendants were acting in concert at the time they shot Taylor Lowery.

133.    The Officer Defendants made offensive bodily contact with Taylor Lowery when they shot and killed him.

134.    The Officer Defendants' offensive bodily contact caused injury to Taylor Lowery including but not limited to his death.

135.    The Officer Defendants' conduct was intentional and demonstrated a deliberate indifference and/or conscious disregard to Taylor Lowery's safety and wellbeing.

136.    The Officer Defendants acted with malice in that they intentionally, deliberately and/or wantonly shot Taylor Lowery when he did not pose a threat to the Officer Defendants or the public.

137.    The conduct of the Officer Defendants was reckless, malicious, wanton, willful and an award of punitive damages is necessary to punish the Officer Defendants and to deter others from the same or similar transgression in the future.

WHEREFORE, Plaintiffs request judgment for general, special, and punitive damages in a sum that this Court may deem just and reasonable, for costs of the suit and attorneys' fees, and for such other relief as the Court may deem just and equitable.

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a jury trial on all issues so triable.

Respectfully submitted,

*/s/William P. Denning*
William P. Denning          KS #21560
Paeten E. Denning          KS #29635
Denning Law Firm, LLC
8900 Indian Creek Parkway, Suite 210
Overland Park, KS 66210
Telephone:      (816) 702-8400
Facsimile:      (816) 702-8401
wdenning@denninglawfirm.com
pdenning@denninglawfirm.com
***ATTORNEYS FOR PLAINTIFFS***

## CERTIFICATE OF SERVICE

I hereby certify that on this 9th day of January 2025, I electronically filed the above and foregoing by using the CM/ECF system which will send a notice of electronic filing to registered counsel.

Spencer K. Bailly, #28627

Jeffrey M. Kuhlman, #26865

WATKINS CALCARA, CHTD.

1321 Main Street – Ste. 300

P. O. Drawer 1110

Great Bend, Kansas 67530

Phone: 620-792-8231

Fax:      620-792-2775

sbailly@wcrf.com

jkuhlman@wcrf.com

***ATTORNEYS FOR DEFENDANT OFFICERS***

Geoffrey L. Lydick, #27215

CITY OF TOPEKA LEGAL DEPARTMENT

215 SE 7th Street, Room 353

Topeka, KS  66603

Phone: 785-368-3883

Fax:      785-368-3901

gllydick@topeka.org

***COUNSEL FOR DEFENDANTS***
***CITY OF TOPEKA***

*/s/ William P. Denning*
Attorney for Plaintiffs