IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| DA'MABRIUS DUNCAN, as special administrator of the Estate of Taylor Lowery, et al.,<br><br>　　　　Plaintiffs,<br><br>v.<br><br>CITY OF TOPEKA, KANSAS, et al.,<br><br>　　　　Defendants. | )<br>)<br>)<br>)<br>)<br>)　Case No. No. 24-2336-DDC-ADM<br>)<br>)<br>)<br>)<br>) |

**PLAINTIFFS' JOINT RESPONSE TO DEFENDANTS'
MOTION FOR SANCTIONS**

COMES NOW Plaintiff Da'Mabrius Duncan, as the Special Administrator of the Estate of Taylor Lowery and L.L., a minor, by and through her next friend Da'Mabrius Duncan, and Attorney LaRonna Lassiter Saunders, and jointly responds to Defendants' Joint Motion for Sanctions and hereby propounds their sworn declarations.

Plaintiff originally filed this matter on August 1, 2024. (Doc. #1) Plaintiff amended her Complaint on January 14, 2025. Defendants sought a protective order in this matter on November 25, 2024 (Doc. #28) prior to the start of discovery and prior to producing any Rule 26 documents. Defendants sought the protection of various documents and an order restricting the disclosure of any and all body camera footage. Plaintiff disputed the protective order in part but agreed that body camera video with personal information and minors would not be disclosed. (Doc. #32).

On December 13, 2024, the Court issued a memorandum and order that granted the protective order in part and denied it in part. (Doc. #33) The Court granted Defendants the

1

ability to designate as confidential portions of the body camera footage that contained a person's contact information and dates of birth. The Court went on the further state that "the Court was not addressing whether such information may or may not be disclosed to the public." Instead, the Court granted the Defendants the ability to mark portions of the video as confidential. The order went on to state that there would be confidentiality of portions of the footage that showed any minors personally identifiable information or image. (see Doc. #33). The Court entered its protective order on December 26, 2024. (Doc. #37).

After the Court entered its protective order, Defendants produced documents, including but not limited to various body camera footage from October 13, 2022. Two of the videos produced by Defendants contained the initial interaction between Topeka Police Department and decedent Taylor Lowery at a residential home where a minor child was present and shown on Officer Good's body camera. Defendants also produced body camera footage from other officers, including two other officers, Officer Gillum and Netherton, who shot Taylor Lowery on October 13, 2022. On Officer Gillum's video there is a call beforehand with an individual unrelated to this matter where he is visible and gives identification to the officers prior to Officer Gillum responding to the call involving Taylor Lowery. Defendants marked all body camera videos as confidential and subject to the protective order.

On or around December 31st, 2024, not aware of the contents of the protective order, Plaintiffs' co-counsel gave three of the body camera footage unredacted to a local news reporter, Sherman Smith with the Kansas Reflector. When the violation was discovered, Plaintiffs' counsel immediately contacted Defense counsel to inform them of the disclosure. Plaintiffs' legal team contacted Sherman Smith in order to retrieve the unredacted video and prevent any further disclosure. Sherman Smith indicated to Plaintiff and Plaintiffs' counsel that while he was aware

of the protective order he would not be returning the videos but instead would comply with the order and not show any portions of the video that had minors or personally identifiable information.  After informing Defendants of the disclosure, Plaintiffs' counsel requested a call with the Court in which they disclosed their knowledge of the extent of the disclosure. During this conference call, and while discussing the disclosure and protective order, Sherman Smith was on the call. Once again, co-counsel and Plaintiff herself contacted Sherman Smith and asked him to destroy the video. Mr. Smith once again indicated that he would not disclose any protected portions of the video, and provided time stamps he believed were compliant with the Court's protective order.

 Despite this agreement, Plaintiffs' counsel still sought for the video not to be released due to the disclosure, but Sherman Smith released a news story on January 30th with the Kansas Reflector. While Mr. Smith did release the video, he did not release or reveal any portions with minors or personally identifiable information.

 Other than the body cameras of Officer Chiles, Officer Good, and Officer Netherton, no other video or documents were disclosed to any member of the public, including any member of the media. While co-counsel did share a link with a reporter from NBC, the original videos were removed and not accessed. Co-counsel had replaced the originals with redacted videos. Mr. Ortiz from NBC confirmed he and his editors only have possession of the redacted videos. Therefore, the only person outside of this litigation that has any video or documents produced in this case is Sherman Smith with the Kansas Reflector.

 We incorporate the facts of the Declaration of LaRonna Lassiter Saunders (Ex. A) and Declaration of Da' Mabrius Duncan (Ex. B) into this response.

**Standard of Review**

A Court's decision to sanction and the choice of sanction are evaluated under an abuse of discretion standard. *Melendez v. Ill. Bell Tel. Co.*, 79 F.3d 661, 670 (7th Cir. 1996). An appropriate sanction is "the least severe sanction adequate to deter and punish" misconduct. *White v. Gen. Motors Corp.*, 908 F.2d 675, 684 (10th Cir. 1990).

"A contempt finding requires the moving party to "establish by clear and convincing evidence that (1) a court order sets forth an unambiguous command; (2) the alleged contemnor violated that command; (3) the violation was significant, meaning the alleged contemnor did not substantially comply with the order; and (4) the alleged contemnor failed to make a reasonable and diligent effort to comply."" *SEC v. Hyatt*, 621 F.3d 687, 692 (7th Cir. 2010) (citing *Prima Tek II, LLC v. Klerk's Plastic Indus., B.V.*, 525 F.3d 533, 542 (7th Cir. 2008)). "Because contempt is a "severe remedy," the Supreme Court has recently instructed that courts should not "resort[] to [it] where there is [a] fair ground of doubt as to the wrongfulness of the [contemnor's] conduct."" *Taggart v. Lorenzen*, 139 S. Ct. 1795, 1801-02, 204 L. Ed. 2d 129 (2019) (quoting *Cal. Artificial Stone*, 113 U.S. at 618). "Under the fair ground of doubt standard, civil contempt . . . may be appropriate when the [contemnor] violates a [protective] order based on an objectively unreasonable understanding of the . . . order or the statutes that govern its scope."

**Legal Argument and Authority**

Similar to *Lawson*, Plaintiffs' co-counsel provided a copy of an unredacted piece of evidence in this matter to an outside party. However, Plaintiffs' co-counsel has provided her declaration thoroughly detailing how the disclosure came about; and demonstrating the disclosure was not willful, malicious nor intentional. Once the legal team learned the disclosure

4

was in violation of the order, all parties took immediate efforts to resolve, claw back the disclosure, and prevent further dissemination.

Due to this disclosure, Plaintiffs' counsel contacted Defendants and the Court in an attempt to prevent any harm or prejudice to this matter or Defendants and in an effort to comply with the Court's order. In *Lawson*, while the Court did find that counsel violated the protective order, the Court also found that counsel accepted responsibility and attempted to remedy the issue. See *Lawson*, 2020 U.S. Dist. Lexis 111390 at 4-5. The Court determined that admonishment for the mistake was sufficient as counsel knew he made a mistake and admonishment by the Court was sufficient to deter any similar conduct.

Here, the Defendants' very public motion for sanctions, with accusations such as "improper purposes" and "willfully violating and disregarding," has been equivalent to, or worse than, an admonishment by the court; especially considering those accusations were not true. Furthermore, in this case, neither the Plaintiff nor the Plaintiff's co-counsel have exhibited any sustained pattern of improperly using any privileged documents. Plaintiff herself never had possession of any videos produced by Defendants.

"Sanctions for civil contempt may **only** be employed for two remedial purposes: (1) to coerce obedience to a court order; or (2) to compensate the complainant for injuries resulting from non-compliance with a court order." Ross v. Univ. of Tulsa, 225 F. Supp.3d 1254, 1268 (N.D. Okla. 2016).

Neither of these two elements are present in this case.

Lack of knowledge of the order and miscommunication about the disclosure were the issues here. Plaintiff and her legal team are now fully aware of areas and have addressed them and took efforts to remedy any disclosures. There are no injuries caused by the release, as none of the protected content was ever released through the media.

On January 31, 2025, Mr. Smith published an article titled "Videos show Topeka police killed Black man holding wrench, not knife, contradicting narrative," on the Kansas Reflector. **None of the protected content was published**.
https://kansasreflector.com/2025/01/31/videos-show-topeka-police-killed-black-man-holding-wrench-not-knife-contradicting-narrative/

On, January 31, Mark McCormick published an opinion article titled, "Without greater transparency, arrogance and shocking police shootings will only continue in Kansas." **None of the protected content was published.** Mr. McCormick references the brief interaction mentioned above, but no third-party personally identifiable witness information was known nor disclosed.
https://kansasreflector.com/2025/01/31/without-greater-transparency-arrogance-and-shocking-police-shootings-will-only-continue-in-kansas/

On February 1, 2025, Mr. Ortiz published a story titled "Family releases bodycam video of Kansas man's fatal shooting by police" on the NBC News website using the redacted footage provided. **None of the protected content was published.**
https://www.nbcnews.com/news/us-news/family-releases-bodycam-video-kansas-mans-fatal-shooting-police-rcna187001

To the extent the Defendants are seeking attorney's fees, Plaintiff and co-counsel ask that this Court, similar to in Lawson, find that a public admonishment is sufficient to correct this disclosure and ensure compliance with the Court's protective order. Further, attorneys fees would be unjust.

Defendants opening paragraph states they are requesting sanctions due to Plaintiff and Plaintiff's co-counsel "willfully violating and disregarding the Court's Protective Order." The facts revealed in the declarations and asserted herein, combined with the actions of the legal team to notify and rectify the disclosure, negates that the actions were willful or disregarding.

For these reasons detailed above, the motion should be denied in full.

WHEREFORE, the Plaintiffs pray that the Court deny Defendants' Joint Motion for Sanction in full. Plaintiffs also request the Court to life the temporary ban while it considers this matter as not allowing the Plaintiff access to this Co-counsel's historical insight and perspective during depositions is prejudicial and places Plaintiff at a significant disadvantage. Plaintiffs ask for any other relief as the Court deems just and proper.


Respectfully submitted,

s/ LaRonna Lassiter Saunders
LaRonna Lassiter Saunders  KS# 21371
7111 W 151st Street, 142
Overland Park, Kansas 66223
(913) 386-7893
Attorney@lassiterlawandjustice.com
Plaintiffs' Co-counsel


s/ Da' Mabrius Duncan
Plaintiff