THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

THE ESTATE OF TAYLOR LOWERY, et al.,

    Plaintiffs,

    v.

CITY OF TOPEKA, KANSAS, et al.,

    Defendants.

Case No. 2:24-CV-002336-DDC-ADM

**DEFENDANTS' REPLY TO RESPONSE TO ORDER TO SHOW CAUSE**

COME NOW, Defendants the City of Topeka, by and through its counsel Nicholas H. Jefferson and Geoffrey L. Lydick, and Defendants Malcolm Gillum, Justin Good, Bradley Netherton, Alexander Wall, and Scott McEntire by and through Jeffrey M. Kuhlman and Spencer K. Bailly, of the law firm of Watkins Calcara, Chtd., their attorneys, and pursuant to the Court's recent order (Doc. 77), submit this reply to Ms. Lassiter-Saunders' response to the Court's order to show cause (Doc. 71).

Defendants withdraw their request for any sanctions against Ms. Duncan. It is clear that Ms. Duncan was not responsible for violating the Court's order. Defendants also withdraw their requests for any further sanctions against Ms. Lassiter-Saunders. This is not because her response is exculpatory; it isn't. On December 13, 2024 she was given a copy of the Court's ruling on Defendants' motion for a protective order. (Doc. 71-1, ¶ 8). And yet, on December 31, 2024, she handed over information that was confidential and subject to a protective order without having exercised any diligence as to the existence or contents of the protective order in this case. More should be expected of an attorney.

But Defendants' sole focus is getting back to litigating this case on the merits in a courtroom, not in the court of public opinion. On that front, Ms. Lassiter-Saunders' response is quite troubling.

Her affidavit reveals that she has been working with Plaintiffs' counsel of record on this matter since late 2022. (Doc. 71-1, ¶ 3). Ms. Lassiter-Saunders described her role in this litigation as follows:

> Over the next year and a half, the Dennings and I have worked together to continue the fight for release of the footage. In our representations of Ms. Duncan, we played different roles. The Dennings were responsible for the legal strategy and court proceedings. **My role involves working with the family, community, and the media.** I ensure the family understands the process and help support their wishes that the community and public be informed about what happened the night Mr. Lowery was killed; as well as work to change policies to prevent such tragedies in the future.

*Id.*, ¶ 7 (emphasis added). She further attested that she keeps her co-counsel "informed on any client, community, or media matters related to the case, and she keeps me updated on the civil case." *Id.* And Ms. Lassiter-Saunders described violating the protective order to immediately "coordinate with the media and legal strategy team, to determine the best way to correct the false narrative and allow the public to see what really happened to Mr. Lowery" as **doing her job.** *Id.* at ¶ 12.

And so, while Ms. Lassiter-Saunders' immediate violation of the protective order is disappointing, it certainly is not surprising in hindsight. And it cannot possibly have been surprising to her co-counsel in foresight. The Court will recall that Defendants sought a more expansive protective order in this case because Defendants were concerned Plaintiffs would use body camera footage for an improper purpose; namely, to misleadingly try this case in the court of public opinion and improperly influence potential jurors. (Doc. 28, pp. 4-6). In response to that argument, Plaintiffs asserted that "Counsel for Plaintiff has no intention of litigating this matter in the court of public opinion." (Doc. 32, p. 5). Yet, at the time that representation was made, Plaintiffs' legal team included "counsel for plaintiff" whose specific "job" was to "coordinate with the media," and who kept her co-counsel "informed on any client, community, or media matters related to the case, and she keeps me updated on the civil case."

In denying portions of Defendants' motion for a protective order, the Court credited Plaintiffs' assertion, and observed that "defendants have not demonstrated that plaintiffs or their

2

counsel are actively giving press conferences and tainting the jury pool so as to prevent defendants from receiving a fair trial." (Doc. 33, p. 6). That is no longer the case. Ms. Lassiter-Saunders has admitted as much in her response. And she has been successful. Going tit-for-tat with the coverage of this incident is exactly what Defendants sought to avoid in the first place, so there is little value in trying to do so here. Suffice it to say, the coverage of this incident has been both factually incorrect and unfavorable to Defendants.[1] Which is exactly what Ms. Lassiter-Saunders hoped for when she violated the protective order, even if that violation was negligent, rather than intentional.

The response to the Court's show-cause order make it clear that trying this case in the court of public opinion, and improperly influencing a potential jury, was a calculated, purposeful strategy of Plaintiffs' legal team. For these reasons, Defendants request that the protective order in this case be modified to include all footage and recordings, in their entirety, as well as any transcripts or footage of the parties' videotaped depositions, which Defendants' fear—justifiably—will also be used, dishonestly and out of context, to further taint a potential jury in this matter. Or, if the Court requires additional briefing on the matter, Defendants' request leave to revisit the Court's prior ruling on its motion for a protective order.

WHEREFORE, Defendants City of Topeka, Malcolm Gillum, Justin Good, Bradley Netherton, Alexander Wall, and Scott McEntire, pray that the Court imposed the above-referenced sanctions, and for such other and further relief as to the Court shall seem just and proper.

---

[1] It is also an unfair fight, because Defendants are committed to litigating this in the courtroom. For example, not a single eyewitness statement supports the assertion in Plaintiffs' Amended Complaint—which is reported on as fact—that Lowery was running away from officers when he was first shot. In reality, he was charging Sergeant McEntire with a knife raised. But due to respect for those eyewitnesses' privacy, a desire to litigate this matter the right way, the Court's protective order, and Rule 3.6 of the Rules of Professional Conduct, Defendants will save that evidence for the Court and, if necessary, a jury.

Respectfully submitted,

WATKINS CALCARA, CHTD.

/s/ JEFFREY M. KUHLMAN
Jeffrey M. Kuhlman, #26865
1321 Main Street - Suite 300
P.O. Drawer 1110
Great Bend, Kansas 67530
(620) 792-8231 Fax (620) 792-2775
jkuhlman@wcrf.com
Attorney for Defendants City of Topeka, Officer Malcolm Gillum, Officer Justin Good, Officer Bradley Netherton, Detective Alexander Wall, and Sgt. Scott McEntire


s/ NICHOLAS H. JEFFERSON
Nicholas H. Jefferson, #25530
City of Topeka Legal Department
215 SE 7th St., Room 353
Topeka, KS 66603
(785) 368-3883; (785) 368-3901 (fax)
njefferson@topeka.org
Attorneys for City of Topeka


**CERTIFICATE OF SERVICE**

I hereby certify that on this 10th day of March, 2025, I electronically filed the above and foregoing Reply by using the CM/ECF system which will send a notice of electronic filing to registered counsel.

/s/ JEFFREY M. KUHLMAN
Jeffrey M. Kuhlman, #26865